**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **JARVIS LEE DANDRIDGE** | **CIVIL ACTION** |
| **VERSUS** | **NO. 21-00732** |
| **COMMISSIONER SOCIAL SECURITY ADMINISTRATION** | **SECTION: "R" (4)** |

## REPORT AND RECOMMENDATION

This is an action for judicial review of a final decision of the Commissioner of Social Security pursuant to Title 42 U.S.C. § 405(g). The Commissioner denied Jarvis Lee Dandridge ("Dandridge") claim for Disability Insurance Benefits under Title II and Supplemental Security Income pursuant to the Social Security Act, Title 42 U.S.C. § 1382(c). The matter was referred to the undersigned United States Magistrate Judge pursuant to Title 28 U.S.C. § 636(b) and Local Rule 19.02E(b), for the submission of Proposed Findings and Recommendations.

## I.    Factual Summary

Dandridge was a forty-nine (49) year old male at the alleged onset date and alleges disability as a result of eight (8) heart attacks, back problems, and pain in legs and feet. Rec. Doc. 17, Tr. 68. On January 16, 2019, Dandridge filed an application for Disability Insurance Benefits under Title II of the Social Security Act and Supplemental Security Income, alleging disability that began on April 1, 2018. Rec. Doc. 23. The claim was initially denied on April 26, 2018. *Id*. After the August 2, 2019, denial on reconsideration, Dandridge, submitted a request for hearing on August 16, 2019, before Administrative Law Judge ("ALJ") Jim Fraiser. *Id*. The hearing took place on May 13, 2020, by telephone due to extraordinary circumstances presented by COVID-19. *Id*.

Thereafter on June 09, 2020, the ALJ found that Dandridge met the insured status requirements of the Social Security Act through September 30, 2021. Rec. Doc. 17, Finding 1,

Tr. 12.   The ALJ further found that Dandridge did not engage in substantial gainful activity since April 1, 2018.   *Id.* at Finding 2, Tr. 17.   The ALJ further found that through the date of last insured, Dandridge had the following severe impairments: degenerative disc disease, cardiomyopathy, gout, alcohol abuse, and coronary artery disease.   *Id.* at Finding 3, Tr. 17.   The ALJ further held that Dandridge did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.   *Id.*

At Step 5, the ALJ found that after careful consideration of the entire record, Dandridge had the residual functional capacity to perform light work.   The ALJ further found that Dandridge could occasionally stoop and climb, but no crouching, kneeling, crawling, ladders or heights.   *Id.* at Finding 5, Tr. 14-15.   The ALJ further found that Dandridge can lift or carry 20 pounds occasionally and 10 pounds frequently.   He found that Dandridge can walk or stand for six hours in an eight-hour day for 30 minutes at a time and sit for six hours in an eight-hour day for two hours at a time.   *Id.*   The ALJ further held that Dandridge can push/pull less than 10 pounds with the lower extremities.   *Id.*

At Step 6, the ALJ concluded that Dandridge is unable to perform any past relevant work. Rec. Doc. 17, Finding 6, Tr. 21.   He further found that Dandridge, on the alleged disability onset date, was 49 years old, which is defined as a younger individual age 18-49, however Dandridge subsequently changed age category to closely approaching advanced age.   *Id.* at Finding 7, Tr. 21. The ALJ held that Dandridge has a limited education and is able to communicate in English.   *Id.* at Finding 8, Tr. 21.   The ALJ noted that transferability of job skills is not an issue because the claimant's past relevant work is unskilled.   *Id.* at Finding 9, Tr. 21.

2

The ALJ found that considering his age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that Dandridge could have performed. *Id.* at Finding 10, Tr. 21. The ALJ found relying upon vocational expert testimony that there are jobs within his residual functional capacity to perform the full range of light work, such as a cashier, information clerk, courier, messenger. *Id*. at Finding 10, Tr. 22.

Dandridge now contends that the ALJ failed to develop the record when he failed to obtain a treating medical source statement of Dandridge's physical limitations from treating sources at Community Health Association of Spokane, including treating Nurse Practitioner LaSalle. Rec. Doc. 23. Alternatively, Dandridge contends that the ALJ failed to order a consultative examination for an opinion of Dandridge's physical limitations. *Id.* Dandridge also contends that the ALJ failed to develop the record when he failed to obtain a consultative examination for an opinion of his mental limitations, as requested by his attorney on May 10, 2019. *Id.*

The Commissioner contends that the ALJ followed the correct legal standards and properly developed the record with respect to physical and mental impairments. Rec. Doc. 27. Therefore, the ALJ's decision is based upon substantial evidence and the Plaintiff's request should be denied.

## II.  <u>Standard of Review</u>

The role of this Court on judicial review under Title 42 U.S.C. § 405(g) is to determine whether there is substantial evidence in the record to support the determination of the fact finder. The Court may not re-weigh the evidence, try issues *de novo*, or substitute its judgment for that of the Secretary. *Allen v. Schweiker*, 642 F.2d 799, 800 (5th Cir. 1981). If supported by substantial evidence, the Secretary's findings are conclusive and must be affirmed. *Richardson*

*v. Perales*, 402 U.S. 389, 390 (1971) (citing 402 U.S.C. § 405(g)); *see also Wilkinson v. Schweiker*, 640 F.2d 743, 744 (5th Cir. 1981).

Substantial evidence is more than a scintilla and less than a preponderance and is considered relevant such that a reasonable mind might accept it as adequate to support a conclusion. *See Richardson*, 402 U.S. at 401. It must do more than create a suspicion of the existence of the fact to be established, but no "substantial evidence" will be found only where there is a "conspicuous absence of credible choices" or "contrary medical evidence." *See Payne v. Weinberger*, 480 F.2d 1006, 1007 (5th Cir. 1973); *Hemphill v. Weinberger*, 483 F.2d 1137, 1138 (5th Cir. 1973).

The concept of disability is defined in the Social Security Act, as the "inability to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted . . . for a continuous period of not less than twelve months." *See* 42 U.S.C. §§ 416(i)(1), 423(d)(1)(A). Section 423(d)(3) of the Act further defines "physical or mental impairment" as "an impairment that results from anatomical, physiological or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

In determining whether a claimant is capable of engaging in any substantial gainful activity, the Secretary applies a five-step sequential evaluation process. The rules governing the steps of this evaluation process are: (1) a claimant who is working and engaging in a substantial gainful activity will not be found to be disabled no matter what the medical findings are; (2) a claimant will not be found to be disabled unless he has a "severe impairment;" (3) a claimant whose impairment meets or is equivalent to an impairment listed in Appendix 1 of the regulations

will be considered disabled without the need to consider vocational factors; (4) a claimant who is capable of performing work that he has done in the past must be found "not disabled;" and (5) if a claimant is unable to perform his previous work as a result of his impairment, then factors such as his age, education, past work experience, and residual functional capacity must be considered to determine whether is he can do other work. *See Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990). The burden of proof is on the claimant for the first four steps but shifts to the Secretary at step five. *Anderson v. Sullivan*, 887 F.2d 630, 632-33 (5th Cir. 1989).

III. **Analysis**

A. **Properly Developed the Record on Physical Impairment**

Dandridge contends that the ALJ failed to develop the record when he failed to obtain a treating medical source statement of his physical limitations from a treating source at Community Health Association of Spokane including the treating nurse practitioner. Specifically, Dandridge complains that while he saw a nurse practitioner at Community Health Association in Spokane, who diagnosed him with chronic low back, right shoulder, and left leg pain, the ALJ failed to request a medical source statement of physical limitations from her. Rec. Doc. 23. He also contends that the ALJ failed to order a consultative examination for an opinion of Dandridge's physical limitations.

The Commissioner contends that substantial evidence supports the ALJ's determination as he properly developed the record with respect to physical impairments. The Commissioner contends that the ALJ considered the entire record and found that Dandridge was able to perform light work subject to certain restrictions.

An ALJ has a duty "to develop the facts fully and fairly relating to an applicant's claim for disability benefits." *Ripley*, 67 F.3d at 557. "If the ALJ does not satisfy his duty, his

5

decision is not substantially justified." *Id*.   Reversal is only appropriate if the plaintiff shows prejudice from the ALJ's failure to develop the record.  *Id*.  "Prejudice can be established by showing that additional evidence would have been produced if the ALJ had fully developed the record, and that the additional evidence might have led to a different decision."  *Id*. at 557 n.22.

At the same time, the claimant bears the burden of proving her disability.  *Wren v. Sullivan,* 925 F.2d at 128.   If she is unable to provide sufficient medical evidence, the ALJ may decide based on the evidence available.  *Id*.   But, when a "full and fair record" is lacking, the ALJ will not have sufficient facts on which to make an informed decision. *Kane v. Heckler*, 731 F.2d 1216, 1219 (5th Cir. 1984); *Garcia. Colin*, 2016 WL3538358 (S.D. Texas 2016).

The ALJ noted that Dandridge while in Spokane received medical treatment from LaSalle, a registered Nurse Practitioner at Community Health Associates of Spokane. Rec. Doc. 17, Finding 5, Tr. 17.   Dandridge contends that he was treated at Community Health Associations from July 3, 2017 through March 9, 2019.   He noted that Dandridge had right knee pain which he first reported on June 29, 2017 which was related to gout. *Id*. at TR. 16.   The ALJ further noted that according to the progress notes in August 2017, September 2017, and May 2018 Dandridge was ambulating normally. *Id.*   The ALJ also noted that Dandridge was walking normally during his visits. *Id.*

Dandridge additionally contends that LaSalle noted a flexing limit that the ALJ should have assessed his physical limitation but did not do so. However, the ALJ found that Dandridge could lift or carry 20 pounds occasionally and 10 pounds frequently. *Id.* at Tr. 14-15.   The ALJ further found that Dandridge could walk or stand for six hours in an eight-hour day for 30 minutes at a time. *Id.*   The ALJ also found that Dandridge could sit for six hours in an eight-hour day for two hours at a time and occasionally stoop and climb but no crouching, kneeling, crawling,

ladders, or heights. *Id*.   The ALJ also found that Dandridge could push pull less than 10 pounds with the lower extremities.   *Id*.

Contrary to the assertion of Dandridge, the evidence of record clearly establishes the effect of his physical condition on his ability to work which included a review of medical opinion evidence.   While an assessment may have been an option, not having an assessment was certainly not error because the record supported the ALJ's findings.   The ALJ's analysis of the evidence incorporated Dandridge's physical impairments and noted that it resulted in some limitations although not to a disabling degree.

For example, regarding Dandridge's flexion limitation, the limitation finding of the ALJ restricted Dandridge to an occasional stoop and climb but no crouching, kneeling, or crawling. This finding clearly incorporates the consideration that Dandridge experienced a tightness in his back upon bending 45 degrees.

Further the medical records show Dandridge's periodic back pain subsided upon walking and Dandridge reported that medication helped.   During a visit on February 6, 2019, Dandridge reported that cramping in his back was relieved by Methocarbamol. Rec. Doc. 17, Tr. 484.   He reported that his cramping was mostly mild and resolved when he would walk for a while.   *Id*. When physical therapy was offered for his back pain, he declined it. *Id*. Also on February 20, 2020, just over a full year later, he was seen by Dr. Dravid for chest pain.   Rec. Doc. 17, Tr. 606. During the visit while he was positive for chest pain, he was also negative for back pain. *Id*.

It is settled that the absence of a medical source statement alone does not necessarily render the record incomplete.   *Ripley* 67 F.3d at. 557.   The Court finds that the ALJ properly developed the record regarding Dandridge's physical limitations and no consultative or treating source opinion was required.   Therefore, the ALJ's opinion was based upon substantial evidence.

**B**.     __Properly Developed the Record on Mental Impairment__

Dandridge complains that his representative requested a consultative psychological exam prior to the hearing, which was subsequently denied by the ALJ.   Rec. Doc. 23, p. 11. Dandridge contends that at the hearing it was made clear to the ALJ that he received no education beyond eighth grade; that he lives with his parents; and that his only past work was unskilled, requiring no greater than a reasoning level of 2. *Id*.   Dandridge further suggests that despite a record that strongly suggested that he would be restricted to unskilled work, the ALJ ultimately relied on cashier and information clerk jobs which require a reasoning level of 3 and higher. *Id*. Dandridge contends that because the vocational expert confirmed that his decision rests on jobs which could not be performed by an individual who is restricted only to simple, unskilled work, the ALJ's error in failing to obtain evidence to quantify Plaintiff's cognitive and educational deficit is not harmless. *Id*.

The Commissioner contends that the ALJ was not required to order a consultative psychological examination unless the claimant presents evidence sufficient to raise suspicion concerning a non-exertional impairment.   Rec. Doc. 27.   The Commissioner points out that Dandridge did not allege a mental impairment or disability in connection with his application for benefits even though he now references deficits in education.   However, the Commissioner contends that educational deficits do not set forth any particular mental impairment that would require a psychological consultative examination.

"[T]he claimant has the burden of proving his disability by establishing a physical or mental impairment." *Jones v. Bowen*, 829 F.2d 524, 526 (5th Cir.1987).   A consultative examination is required to develop a "full and fair record" only if "the record establishes that such an examination is necessary to enable the [ALJ] to make the disability decision." Id. The ALJ

decides whether such evaluation is necessary by examining the record, and the decision is committed to the ALJ's discretion. *Carey v. Apfel,* 230 F.3d 131, 142 (5th Cir. 2000).

A claimant who alleges that the ALJ failed to fully develop the facts is required to show prejudice. Likewise, this Court will not reverse the decision of an ALJ for failure to fully and fairly develop the record unless the claimant shows that he was prejudiced by the ALJ's failure. To establish prejudice, a claimant must demonstrate that he "could and would have adduced evidence that might have altered the result." *Ripley* at.557.

Upon review of Dandridge's claim, his representative seems to conflate a lack of education with a mental disorder. Moreover, Dandridge has not asserted a disability claim based on a mental disorder. To the contrary, Dandridge's claim of disability is because of obesity, degenerative disc disease, cardiomyopathy, gout, alcohol abuse, and coronary artery disease. Rec. Doc. 17, Tr. 13.

Furthermore, there is no evidence in the record pertaining to a mental impairment. The fact that the attorney requested a consultative examination does automatically suggest that the ALJ needed to comply with the request where the request was not relevant to the alleged disability being considered.

Additionally, even if the record contained statements about Dandridge having low intelligence, such evidence would be insufficient to raise suspicion that a claimant had an intellectual disability. *Pierre v. Sullivan,* 884 F.2d 799, 802-03 (5th Cir. 1989). The Court finds that the ALJ's opinion is based upon substantial evidence and the ALJ was not required to order a consultative examination to assess Dandridge's mental status for the reasons assigned above.

## IV.     <u>Recommendation</u>

It is the **RECOMMENDED** that the ALJ's decision denying Jarvis Lee Dandridge's claim for Disability Insurance Benefits and Supplemental Social Security Income is **AFFIRMED**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).

New Orleans, Louisiana, this 13th day of June 2022

_____
**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**